Anthony M. DiMassa, Philadelphia, PA, for Defendants.

## ALLIANZ INSURANCE COMPANY, Subrogee of Mercedes Benz Credit Corp., Plaintiff,

v.

## PENNSYLVANIA ORTHOPEDIC ASSOCIATES, INC. and Anthony J. Balsamo, M.D., Defendants.

Civil Action No. 96–7470.

United States District Court, E.D. Pennsylvania.

Sept. 8, 1998.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

LOWELL A. REED, Jr., District Judge.

In an Order dated July 14, 1998, this Court granted summary judgment in favor of plaintiff Allianz Insurance Company ("Allianz") as to liability on its claim that defendants Pennsylvania Orthopedic Associates, Inc. ("POA") and Anthony J. Balsamo, M.D. ("Balsamo") defaulted on a lease agreement for a 1992

---

Mercedes Benz 300SE sedan.[1] (Document No. 39). A bench trial was held before this Court on August 31, 1998 on the issue of damages only.

Having conducted a non-jury civil trial on the issue of damages at which counsel for all parties participated, and based upon the pleadings, the evidence and testimony presented at trial, and the arguments of counsel, I make the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT[2]

1. POA and Balsamo entered into a Motor Vehicle Lease Agreement (Ex. P-1) with Mercedes Benz Credit Corporation ("MBCC") on May 20, 1992 for a 1992 Mercedes Benz 300SE sedan. The lease term was thirty-six months, from May 20, 1992 to May 20, 1995.

2. On April 10, 1994, Balsamo's son was involved in an accident in the vehicle which severely damaged the vehicle and injured his son.

3. The defendants stopped paying lease payments after the accident in April of 1994. The defendants were required to make thirty-six monthly payments under the lease. (Ex. P-1 at ¶ 2).

4. In a letter dated April 18, 1994, the defendants sent notice to MBCC that the car had been damaged in an accident. (Ex. D-2).

5. Balsamo and his wife brought suit on behalf of their son against Mercedes Benz of North America ("MBNA"), claiming that the driver's side airbag did not deploy during the accident of April 10, 1994. During discovery in that case, the vehicle was dismantled for testing. Experts on behalf of the Balsamos and MBNA conducted testing on the vehicle, which entailed dismantling of various parts of the interior of the car. It is unclear which if any of these parts were completely and permanently removed from the vehicle.

6. Ferdinand Gonzales was qualified as an expert in auto appraising at trial, and finding him a credible witness, I credit his testimony. On July 18 and July 19, 1995, Gonzales was retained by the defendants to inspect the car and dismantle it. Gonzales testified that the car was a total loss as of the date of the accident, even before the car was dismantled for testing. Gonzales testified that the salvage value of the car was reduced by the dismantling because of the high replacement value of the parts that were dismantled, but he was not able to testify as to the salvage value of these parts nor quantify the amount that the salvage value of the car was reduced.

7. As the products liability action was proceeding, MBCC brought an action in replevin to recover the vehicle. Sometime after this action was filed, the defendants agreed to return the vehicle to MBCC. I find that the defendants' efforts to initially defend against the replevin action demonstrates that the defendants withheld the vehicle from Allianz for their own personal, albeit legitimate, reasons to further the product liability action against MBNA.

8. The motor vehicle which was the subject of the lease between MBCC, POA, and Balsamo was recovered by MBCC in a severely damaged condition. (Ex. P-33, Stipulation of Uncontested Facts).

9. John Kelly was qualified as an expert in auto appraising at trial, and finding him to be a credible witness, I credit his testimony and his report. When MBCC recovered the car after the replevin action, it retained Kelly to inspect the car. Kelly inspected the car in February of 1996. Kelly reported to MBCC in his final status report that the car was a "obvious total loss." (Ex. P-7). Kelly concluded that the car was a total loss from accident damage, and he did not attempt to quantify the value of the dismantled parts.

10. MBCC sent to the defendants and the defendants received a notice of termination of the lease dated August 11, 1995. (Ex.

---

1. The defendants filed a motion for reconsideration of this Order which was denied by Order of this Court dated August 14, 1998 (Document No. 46).

2. To the extent that these findings of fact include conclusions of law or mixed findings of fact and conclusions of law, these findings and conclusions are hereby adopted by this Court.

P–11). The notice informed the defendants that the car was going to be sold, and that if the sale of the vehicle was not sufficient to cover the lease balance and any other amounts owed to MBCC, the defendants were obligated to pay the remaining balance. In order to ascertain the current balance owed, the defendants were informed they would have to call MBCC. (Ex. P–11).

11. Allianz paid $62,752.69 to MBCC for the losses and costs associated with the vehicle pursuant to an insurance policy Allianz had issued to MBCC. (Ex. P–33, Stipulation of Uncontested Facts).

12. The repossessed vehicle was disposed of at the Manheim Auction for $13,250.00 as set forth in the payoff breakdown by MBCC. (Ex. P–33, Stipulation of Uncontested Facts). MBCC paid this salvage recovery to Allianz. (Ex. P–33, Stipulation of Uncontested Facts). Thus, the net payment by Allianz was $49,502.69. (Ex. P–33, Stipulation of Uncontested Facts).

13. David Ginsberg, Esq., was originally retained as counsel by Allianz to handle this case, and he subsequently retained local counsel, who conducted this litigation and tried the case before this Court. David Ginsberg testified at the trial, and finding him a credible witness, I credit his testimony. Ginsberg has an arrangement with Allianz whereby he will receive a contingency fee of one third of any amounts recovered by Allianz. Ginsberg must compensate any local counsel he retains to assist in his case on behalf of Allianz.

14. Ginsberg sent a letter dated October 16, 1996 to counsel for defendants proposing that if the defendants would settle the case, Allianz would waive attorney fees and interest owed under the contract. (Ex. P–18). Ginsberg received no response from the defendants to this offer. A payoff breakdown was sent to the defendants with the letter. (Ex. P–8). This was the first time that Allianz provided a breakdown of the amounts owed by the defendants.

15. MBCC and Allianz made reasonable efforts to inquire with the defendants as to their collision insurance coverage on the car and to attempt to settle their dispute with the defendants before pursuing this lawsuit to recover their damages. (Exs. P–14, 15, 16, 17, and 18).

16. The breakdown of the payoff amount provided to the defendants from Allianz was as follows:

| | |
|---|---|
| Payoff | $41,145.50 |
| Sales Tax- | $ 1,091.09 |
| Past Due Payments- | $12,123.02 |
| Late Charges- | $ 606.06 |
| Repo/Investigation Fees | $ 150.00 |
| Legal Fees | $ 7,637.02 |

(Ex. P–8).

17. Joe Rechtine, portfolio team leader on terminated accounts for MBCC, testified at trial, and finding him a credible witness, I credit his testimony. Rechtine explained that the amount designated as "payoff" in the breakdown provided to the defendants represented the residual value of the vehicle as set forth in the lease at (Ex. 1, ¶ 2(D)), that the sales tax and past due payments represented the thirteen monthly payments that the defendants owed under the lease calculated at $83.93 in sales tax and $932.54 for the lease payment for 13 months, and that the late charges constituted 5% of the base lease payment per month for each late payment under ¶ 4 of the lease (Ex. P–1). Allianz never sent a breakdown of the legal fees of $7,637.02 to the defendants, and the defendants never requested one. Rechtine explained that these legal fees were paid to counsel in pursuit of the successful replevin action necessary to recover possession of the car.

18. I find that as applied to the named parties, the lease terms factually provide under ¶ 15 that the defendants agreed to "be responsible for the risk of loss, damage or destruction of the vehicle during the lease term and until [the defendants] return the vehicle to [MBCC]." The agreement provides that the lease would be terminated immediately if the "vehicle is damaged and is in a condition which [MBCC] believes is beyond reasonable repair." If the lease is so terminated because of damage to the vehicle, the defendants' "termination liability to [MBCC] will be equal to the amount [the defendants] would have to pay if [they] defaulted on

this lease" as set forth in ¶ 20, less any insurance proceeds provided by the defendants. The lease further provides that if the insurance proceeds of the defendants are not sufficient to cover the deficiency, the defendants are liable to MBCC and shall pay on the MBCC's demand the amount of the deficiency. (Quotes from Ex. P–1, bracketed language added).

19. As applied to the named parties, paragraph 20 of the lease factually provides that upon a default by the defendants, the defendants

> shall be liable for, and shall pay to [MBCC] upon demand made by [MBCC], the sum of the following (i) any lease payments or other amounts due and owing under the lease at the time of default, plus (ii) the balance of the lease payments which I would have made had the lease gone to term, less a deduction for the time-value of such payments computed in accordance with the Rule of 78's, plus (iii) the Estimated End of Term Residual Value (Item 2D), plus (iv) an amount equal to one monthly lease payment; plus (v) any and all commissions, fees, or other amounts paid by [MBCC] as consideration for the assignment of this lease.

In addition to this sum, the defendants agreed to "be liable for interest on the total amounts [the defendants] may owe [MBCC] from time to time by reason of [the defendants'] default at the rate of eighteen percent (18%) per annum both before and after judgment, to the extent permitted by law" as well as "collection or legal costs which [MBCC] may incur, including reasonable attorney's fees and court costs, to the extent permitted by law." (Ex. P–1).

20. Paragraph ¶ 4 of the lease provides that the defendants "agree to pay with respect to any installment of monthly rent which is not paid in full within ten days after it is due, a late charge in an amount equal to five percent (5%) of such past due rent installment or Fifty Dollars ($50.00), whichever is less." (Ex. P–1).

21. In an Order dated July 14, 1998, this Court granted summary judgment to Allianz on the issue of the defendants' liability under the lease agreement (Ex. P–1) in reliance upon ¶¶ 13, 15, and 20 of the lease agreement and noting that the defendants had agreed to be responsible for the risk of loss, damage, or destruction of the vehicle during the lease term and to return the leased vehicle at the termination of the lease in an undamaged condition. (Document No. 39).

22. Allianz argued at trial that the defendants defaulted on the lease in four ways: (1) failure to pay the required lease payments after March of 1994, (2) failure to return the vehicle at the end of the lease period on May 20, 1995 pursuant to ¶ 13 of the lease, (3) failure to return the vehicle in an undamaged condition pursuant to ¶ 13 of the lease, and (4) failure to maintain insurance on the vehicle as required by ¶ 10 of the lease. Allianz argued that the primary default occurred when the defendants failed to return the vehicle at the end of the lease period on May 20, 1995, and that the interest owed to it under the lease from the defendants should be calculated from that date.

23. The defendants presented many defenses to the damage claims of Allianz. First, the defendants claimed that they were not in default of the lease agreement because the plaintiff's claim is based on a failure to have collision insurance coverage, a claim for which plaintiff has no proof.[3] The defendants contend that Allianz never raised the failure to pay the lease payments or the failure to return the car at the end of the lease period as bases of liability prior to trial.

24. Second, the defendants claimed that Allianz and MBCC failed to mitigate their damages by not attempting to recover collision insurance proceeds from the defendants' insurer before filing suit against the defendants.

---

3. The defendants also argued in their opening that they did obtain collision insurance on the car, contrary to the claim of Allianz that the defendants were in default of the lease because they failed to obtain such insurance. However, because counsel for Allianz informed the Court that Allianz was not pursuing such a claim, the Court need not address this defense.

25. Third, the defendants claimed that Allianz is not entitled to subrogation under applicable Pennsylvania law because Allianz is a primary obligor and the defendants, either directly or indirectly, are insureds or additional insured under the Allianz policy.

26. Fourth, the defendants attacked the amount of damages claimed by Allianz. The defendants argued that Allianz did not meet its burden of proof to establish the actual amount of loss under the lease agreement. The defendants argued that Allianz did not quantify the amount owed under the lease until October 1996. In addition, the defendants argued that under ¶ 20 of the lease, if damage to the car renders it a total loss during the period of the lease but the car is recovered by the lessee after the end of the lease period, the future payments owed by the defendants should have been reduced to their present value by the Rule of 78s.

27. Fifth, the defendants claimed that Allianz is not entitled to 18% per annum interest, counsel fees and costs where Allianz's right to recovery is predicated on the risk of loss provision of the lease in ¶ 15.

28. Sixth, the defendants claimed that there was an issue as to whether the accident caused the total loss of the vehicle or if the dismantling and testing that occurred after the accident contributed to the damage. Further, the defendants argued that because they had probable cause to sue the manufacturer of the car, the defendants were not in default for failing to return the car to MBCC during the pendency of their lawsuit against MBNA. The defendants claimed that on June 1, 1994, MBNA sent a letter to them claiming that it would bring a claim for spoilation of evidence in the products liability action unless the car remained in its post accident condition. Thus, the defendants claim that the car was not in the possession of the defendants during the pendency of the products liability case.

29. Seventh, the defendants argued that portions of the lease agreement were ambiguous, including ¶¶ 10 and 20, and should be construed against the drafter, MBCC.

30. At the close of plaintiff's case, the defendants made a motion for judgment as a matter of law, which the Court took under advisement.

## II. CONCLUSIONS OF LAW [4]

31. Although Allianz argued that the primary default occurred when the defendants failed to return the car at the end of the lease period, summary judgment as to liability was based on the defendants' failure to return the car in an undamaged condition, the theory argued by plaintiff in that motion. Accordingly, this is the basis of liability I will use to determine damages owed to Allianz by the defendants. The other grounds for default by the defendants under the lease presented by Allianz at trial—that the defendants failed to maintain proper insurance, that the defendants failed to make lease payments after the accident, and that the defendants failed to return the vehicle at the end of the lease period—were not presented to this Court by Allianz at the summary judgment stage when judgment as to liability was entered in favor of Allianz. (Document No. 18). Thus, these arguments were waived by plaintiff and thus untimely at the trial and irrelevant to the issue of damages.

32. Having found in ¶ 8, supra, that the defendants returned the vehicle to MBCC in a damaged condition, I conclude here as I did in entering summary judgment on liability that the defendants breached the lease agreement and are liable to Allianz, as subrogee of MBCC, for damages. Further, I conclude that the defendants' termination liability is equal to the amount they would have to pay if they had defaulted under the lease as set forth in ¶ 20.[5]

---

**4.** To the extent that these conclusions of law include findings of fact or mixed findings of fact and conclusions of law, these findings and conclusions are hereby adopted by this Court.

**5.** In support of their fifth defense, the defendants argued that because the lease was terminated under ¶ 15 due to the damaged condition of the car, and not because the defendants "defaulted" under ¶ 20 of the lease, they are not liable for

33. Having found in ¶ 7, supra, that the defendants retained the car after the accident (incidentally to pursue a products liability action), I conclude that the defendants were responsible for the risk of loss until the car was returned to MBCC under ¶ 15 of the lease such that the defendants are liable for the contractual effects of the damage to the vehicle as reflected in its entire condition at the time it was returned. The actual cause of the damaged condition of the car at that time is irrelevant to the interpretation of the contractual obligations of the defendants under the lease.

34. I now undertake the task of calculating the damages owed by the defendants to Allianz. Under ¶ 20 of the lease, termination liability for a default includes the unpaid lease payments owed to MBCC under the lease to the end of the lease term. Having found in ¶ 3 that the defendants stopped paying lease payments at the time of the accident and that the defendants were required to make thirty-six monthly payments under the lease even if the car was damaged and not recovered by MBCC until after the lease period, I conclude that the defendants owe Allianz for thirteen late lease payments, which total $13,-214.11.[6] The defendants are not entitled at this time to a reduction for the time-value of such payments computed in accordance with the Rule of 78s because such a reduction only applies, and indeed, only makes sense, if a lessor pays off future lease payments owed under the lease *before* such payments were due.

35. The termination liability for a default under the lease also includes the residual value of the vehicle, which was set in the lease agreement at $41,145.50. (*See* Finding of Fact ¶ 17, supra).

36. Having found in ¶ 19, supra, that ¶ 20 of the lease provides that a lessor's termination liability includes "other amounts due and owing under the lease at the time of default," I conclude that under ¶ 4 of the lease, the defendants are liable to Allianz for late fees on the past due lease payments. (See Finding of Fact ¶ 20, supra). The late fees equal $606.15.[7]

37. In summary, I conclude that the breakdown of the payoff provided to the defendants by Allianz (Ex. P–8) is an accurate calculation of the damages the defendants owe Allianz for the residual value of the vehicle, past due payments including sales tax, and late fees.[8] The sum of these amounts brings the total termination liability of the defendants to $54, 965.76.

38. Under ¶ 20 of the lease, POA and Balsamo are liable for interest on their termination liability at the rate of 18% per annum before and after judgment, from August 11, 1995, on which date MBCC sent a note of termination of the lease to the defendants, to the date of this verdict. (*See* Finding of Fact ¶¶ 10 and 19, supra). The total amount of interest owed by the defendants on the date of this verdict is $30,440.49.[9] The defendants did not cite any cases or other authority for their argument that the interest rate specified in the lease is not enforceable under applicable law.

39. Under ¶ 20 of the lease, POA and Balsamo are liable to Allianz for collection and legal costs, including attorney's fees. (See Finding of Fact ¶ 19, supra). Having

interest and attorney's fees to Allianz because those are available under ¶ 20. I conclude that the defendants' argument must fail. The lease agreement is clear in ¶ 15 that if the lease is terminated because of its damaged condition, the defendants are liable to Allianz in an amount equal to the amount they would be liable for if they would have defaulted under ¶ 20. Thus, I conclude that the provisions of ¶ 20 pertaining to interest and attorney's fees apply to a lessor whose lease is terminated because of the damaged condition of the car.

6. This figure is the sum of thirteen monthly payments at $932.54 per month ($12,123.02) plus

$83.93 in sales tax per month for thirteen months ($1091.09).

7. This total is 5% of the base lease payment of $932.54 for 13 monthly payments.

8. With this exception: the late fees calculated in the payoff breakdown were $606.06; however, the repeated calculations of the late fees by this Court yield a total for late fees of $606.15.

9. The interest was calculated as follows: $54,-965.76 at 18% per year for 1123 days (covering August 11, 1995 until September 8, 1998) yields $30,440.49 in interest.

found in ¶ 16 that MBCC and Allianz were reasonable in their pursuit of this lawsuit, I conclude that Allianz is entitled to recover these costs and fees including the repossession/investigation fees ($150.00) and the legal fees incurred by MBCC in recovering the vehicle ($7,637.02), plus one third of the total recovery by Allianz in this case for the counsel fees Allianz will owe to Ginsberg ($31,019.25). The total amount of the costs and fees owed by the defendants is $38,806.27.

40. Finally, I turn to the remaining defenses of the defendants. As for the defendants' second defense, no provision of the lease restricted Allianz' recovery to any insurance proceeds it could collect from the lessor's insurance. Thus, I conclude that the arguments presented by both sides regarding whether Allianz failure to mitigate its damages by failing to collect insurance proceeds directly from the collision insurance carrier of the defendants or whether the defendants hid the identity of their insurance carrier from Allianz are irrelevant to the disposition of this case.

41. I conclude that the arguments presented by the defendants at trial pertaining to their liability under the lease agreement were untimely and irrelevant because their liability to Allianz had already been established by the July 14, 1998 Order of this Court. Specifically, the defendants waived their third defense that Allianz was not entitled to subrogation because the defendants did not include this defense in their answer and affirmative defenses to the complaint or in their response to the motion for summary judgment.

42. In light of the testimony of Gonzales at trial, the defendants withdrew their defense that the salvage value of the car had been reduced by the dismantling. Thus, the Court need not address the defendants' sixth defense.

43. Addressing the defendants seventh defense, I conclude that the defendants never raised the issue of the ambiguity of the lease agreement before trial, and as such the defense was untimely. Nevertheless, I conclude that the lease agreement is not ambiguous and is binding on the defendants and MBCC.

44. Having made the foregoing conclusions of law, the motion of defendants for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 will be denied.

45. Both defendants are parties to the lease and are thus both liable for breach of contract. (Stipulation of Uncontested Facts ¶ 7). As well, Balsamo signed the guarantee of payment by POA. (Ex. P–1).

### III. VERDICT

Having concluded that the defendants Balsamo and POA breached the lease agreement by failing to return the vehicle in an undamaged condition, and based upon the foregoing findings and conclusions, my verdict is in favor of Allianz in the amount of $124,212.52 including interest to the date of this verdict.